*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BROWN/MCCOVERY, Minors.

UNPUBLISHED
May 4, 2023

No. 362528
Genesee Circuit Court
Family Division
LC No. 19-136336-NA

Before: GADOLA, P.J., and PATEL and MALDONADO, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her rights to the minor children, QTB, SM1, and SM2, pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or physical or sexual abuse to child or sibling), (c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). We affirm the trial court's finding that the statutory grounds for termination of respondent's parental rights were established by clear and convincing evidence. However, because the trial court failed to consider the fact that the children were placed with a relative, we must vacate the court's finding that termination of respondent's parental rights was in the best interests of the children and remand this case for additional fact finding.

## I. BACKGROUND

In October 2019, the Department of Health and Human Services (DHHS) alleged that respondent was homeless, abusing alcohol, severely physically abusing her children, neglecting her children, and not financially providing for the children despite getting state assistance funds to do so. DHHS requested that the trial court remove the children from respondent's care and custody and exercise jurisdiction. The court authorized the petition, the children were removed from respondent's care, and respondent was granted supervised parenting time.

In February 2020, a bench trial was conducted to determine whether the court could exercise jurisdiction over the children. At the beginning of the trial, respondent pleaded to jurisdiction pursuant to MCL 712A.2(b)(1) and (b)(2). Respondent admitted to and pleaded *nolo contendere* to DHHS's allegations in its petition that she was homeless, that she still would have been homeless had she not been incarcerated at the time, and that her failure to maintain a home

placed the children at a risk of harm. The trial court exercised jurisdiction, continued respondent's supervised parenting time, and ordered DHHS to engage in reasonable efforts toward reunification. DHHS created a case service plan, which the trial court adopted. Respondent was ordered to participate in and benefit from (1) parenting classes, (2) domestic violence classes, (3) individual therapy, and (4) substance abuse treatment. Respondent was also ordered to complete a psychological evaluation, submit to random drug screenings, maintain a legal source of income and suitable housing, and regularly attend visits with the children.

Because respondent was incarcerated at the height of the COVID-19 pandemic, her access to services was limited. However, respondent engaged in all of the services that were available to her and regularly attended supervised visits with the children, who were living with respondent's grandmother. In August 2020, DHHS asked the trial court to change the permanency plan to adoption and to authorize DHHS to file a petition to terminate respondent's parental rights. The trial court changed the permanency plan to a dual goal of reunification and adoption, but it denied DHHS's request to authorize it to file a petition for termination. Upon her release from prison in May 2021, respondent completed all of the services that were expected of her, maintained a legal source of income, found suitable housing, submitted to random drug screenings, and regularly attended supervised visits with the children.

On January 13, 2022, the trial court ordered that the permanency goal be changed back to reunification and that the children be placed back into respondent's custody because respondent had completed all of the services that were recommended to her by DHHS. However, less than two weeks after the children were released back to her care, respondent was arrested again for child abuse. On January 25, 2022, the trial court removed the children from respondent's custody, and DHHS placed the children back into the care of respondent's grandmother.

In April 2022, DHHS filed a petition to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). At the termination hearing, both the DHHS caseworker and respondent testified that respondent was convicted of third-degree child abuse on two separate occasions, one of which was related to the January 2022 incident. Respondent admitted at the termination hearing that she "popped" QTB in the mouth in January 2022 and stated that she was disciplining him. Respondent also admitted that she bit SM1 and SM2 in January 2022 while she was playing with them, but she stated that the bites were "playful." The caseworker testified that QTB reported that respondent drank alcohol daily and physically abused him and his brothers every night after she had regained custody on January 13, 2022. Respondent, respondent's grandmother, and the caseworker all testified that during a phone call from jail, respondent instructed the children to tell the authorities that they lied about the abuse that occurred in January 2022. Respondent also asked her grandmother, with whom the children had been residing, to convince the children to say that they lied because she was "looking at six years" in prison. The caseworker testified that respondent completed all of her services but that respondent did not benefit from the services because she continued to abuse her children after regaining custody. The caseworker testified that termination was in the children's best interests because respondent failed to benefit from the services; it was unfair and unhealthy for the children to have to continue to deal with physical abuse, substance abuse, and anger management issues from respondent; and two of the children stated that they were afraid of respondent. At the close of proofs, the trial court found that DHHS had established grounds for termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) by clear and convincing evidence and that termination was in the children's best interests.

Additionally, the trial court sua sponte concluded that termination was also appropriate under MCL 712A.19b(3)(b)(*i*).[1] This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred by finding statutory grounds for termination of her parental rights. We conclude that the evidence of respondent's ongoing physical abuse of her children in conjunction with her inability to recognize that her actions constituted abuse supported the trial court's findings pursuant to MCL 712A.19b(3)(c)(*i*). We decline to review the court's findings as it pertains to subdivisions (b)(*i*), (c)(*ii*), (g), and (j).

"[T]o terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). To be clearly erroneous, a trial court's determination must be more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. *Id*. We give regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *Ellis*, 294 Mich App at 32. If we conclude that the trial court did not clearly err by finding one statutory ground for termination of respondent's parental rights, we need not address the additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Termination under MCL 712A.19b(c)(*i*) is proper when "the totality of the evidence amply supports that [the respondent] had not accomplished any meaningful change in the conditions" that led to the adjudication, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and would not be able to rectify those conditions within a reasonable time, MCL 712A.19b(3)(c)(*i*). At the time of termination, 182 or more days had elapsed since the issuance of the initial dispositional order with respect to respondent. See MCL 712A.19b(3)(c). Additionally, respondent did not accomplish any meaningful change in the conditions that led to adjudication.

The children were removed from respondent's care in 2019 primarily because of her physical abuse of the children. Respondent was convicted of third-degree child abuse twice, and the second conviction was related to abuse that occurred less than two weeks after respondent had regained custody of the children. Respondent admitted to hitting QTB to "discipline" him, and she strongly implied that she would hit one of her children again if similar circumstances arose. Respondent also admitted that she told her children to lie about the January 2022 abuse and told

---

[1] We note that a parent in a parental rights termination proceeding has a due-process right to notice of the nature of the proceedings and a meaningful opportunity to be heard. *In re TK*, 306 Mich App 698, 706; 859 NW2d 208 (2014). By sua sponte concluding that termination was also appropriate under MCL 712A.19b(3)(b)(*i*), the trial court necessarily brought about a due-process issue. See *In re Perry*, 193 Mich App 648, 650-651; 484 NW2d 768 (1992). However, because termination was proper under other grounds that were properly raised by DHHS and found by the trial court, any error in this regard was harmless. *HRC*, 286 Mich App at 461.

her grandmother to convince the children to lie about the abuse. The caseworker testified that QTB stated that he was afraid that respondent would "beat him up" after she was released from prison if he did not lie about the abuse as she instructed him to. QTB reported that respondent had physically abused him and his younger brothers on a daily basis since they were placed back in her custody. Two of the children told the caseworker that they were afraid of respondent. Additionally, SM1 and SM2 reported that they saw respondent hit QTB with a can in his lip in January 2022, and QTB reported that respondent hit him approximately 10 to 15 times with the can.

The record also supports the trial court's finding that there was no reasonable likelihood that respondent would rectify the conditions within a reasonable time. See MCL 712A.19b(3)(c)(*i*). On appeal, respondent emphasizes that she participated in and completed all of the services that DHHS provided to her. However, a respondent's "mere participation is not the same as overcoming the barriers in place." *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021). The caseworker testified that despite respondent's completion of the offered services, respondent showed no benefits from the completed services because she continued to drink alcohol and physically abuse her children. Participation in and completion of services is insufficient where a respondent "fail[s] to demonstrate sufficient . . . benefit from those services specifically targeted to address the primary basis for the adjudication in th[e] matter[.]" *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). While respondent completed services that were meant to address her substance abuse issues, anger issues, and physical violence issues, the fact that she was incarcerated *again* for child abuse after drinking and physically abusing her children less than two weeks after she had regained custody of them was very strong evidence that she did not benefit from the provided services. See *Sanborn*, 337 Mich App at 274; see also *Frey*, 297 Mich App at 248. Given respondent's history, the caseworker did not believe that respondent would benefit from additional services if given more time, and the trial court agreed. Accordingly, the record supports the conclusion that there was no reasonable likelihood that respondent would rectify the conditions that led to adjudication within a reasonable time. See MCL 712A.19b(3)(c)(*i*).[2]

For these reasons, we conclude that the trial court did not clearly err by finding that grounds for termination of respondent's parental rights had been established by clear and convincing evidence.

### III. BEST INTERESTS

The children were placed with their great grandmother at the time of the termination of respondent's parental rights; however, nothing in the record suggests that the court considered that the children were placed with a relative when it articulated its findings. Therefore, we must vacate the trial court's best interests determination and remand for additional fact finding.

"If the court determines that one or more statutory grounds for termination exist and that termination is in the child's best interests, the court must enter an order terminating the

---

[2] Because only one statutory ground for termination must be established to terminate parental rights, *HRC*, 286 Mich App at 461, we need not address the additional statutory grounds for termination.

respondent's parental rights and order that additional efforts for reunification not be made." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). When determining whether termination is in the best interests of the child, the court should place its "focus on the child rather than the parent." *Schadler*, 315 Mich App at 411. In making its determination, the court may consider a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *White*, 303 Mich App at 713-714. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. The trial court must determine each child's interests individually, but it is not required to make individual best-interest findings for each child when the best interests of the children do not significantly differ. *Id*. at 715-716.

In this case, all three children were placed with their great grandmother. Great grandparents are considered "relatives" as the term is defined for the purposes of termination proceedings. See MCL 712A.13a(1)(j)(*i*).

> [B]ecause a child's placement with relatives weighs against termination . . . the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests. Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests. *A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal*. [*In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).]

In the present case, the trial court made no mention of the fact that the children were placed with a relative while making its findings pertaining to best interests or the statutory grounds. The omission "renders the factual record inadequate" and the case must therefore be remanded for additional fact-finding. *Id*.

Petitioner argues that the best interest findings should be affirmed because there was testimony suggesting that the great grandmother was not a suitable placement. Regardless of petitioner's opinion regarding the suitability of this placement, the children were placed with her at the time of termination. Therefore, the trial court *must* consider this placement when assessing the best interests of the children. Because it did not do so, we have no choice but to vacate its finding and remand for additional proceedings.

## IV. CONCLUSION

We affirm the trial court's finding that petitioner provided clear and convincing evidence that at least one statutory ground for termination of parental rights was established. We vacate the trial court's finding that termination of respondent's parental rights was in the best interests of the children. This case is remanded for additional proceedings consistent with this opinion. We retain jurisdiction.

/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Allie Greenleaf Maldonado

# Court of Appeals, State of Michigan
## ORDER

*In re* Brown/McCovery Minors

Docket No.     362528

LC No.        19-136336-NA

Michael F. Gadola
Presiding Judge

Sima G. Patel

Allie Greenleaf Maldonado

Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. The proceedings on remand are limited to the issues specifically addressed in the opinion issued concurrently with this order.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

May 4, 2023
Date

Chief Clerk